IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| TAMMY BERLENE HALEY, | ) | Civil Action No. 3:12-1219-JMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a Social Security case filed by the Plaintiff, *pro se*, on May 8, 2012. This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on December 11, 2009 and protectively filed an application for SSI on November 30, 2009. She alleges disability beginning on May 19, 2009. Tr. 191-199. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 11, 2011, at which Plaintiff (represented by counsel) and a vocational expert ("VE") appeared and testified. The

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

ALJ issued a decision on May 26, 2011, finding Plaintiff was not disabled because work existed in the national economy which Plaintiff could perform.

Plaintiff was forty-eight years old at the time of the ALJ's decision. She has an associate degree in applied science and past work experience as a medical assistant and nurse. See Tr. 37, 55, 57-62, 232. Plaintiff alleges that she became disabled due to gastroesophageal reflux disease ("GERD"), depression, asthma, chronic urticaria, Chiari malformation, degenerative disc disease ("DDD"), arthritis, a bone spur in her left ankle, hypersomnolence, anxiety, acid reflux, pain in her joints, pain in her knees, pain in her ankles, pain in her feet, chronic back pain, chronic fatigue, difficulty sleeping, and heel spurs. See Tr. 242.

The ALJ found (Tr. 25-38):

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since May 19, 2009, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: depression, anxiety, medication side effects, foot and ankle pain, arthritis, obesity, asthma, and myalgias/myositis/ myofascial plain syndrome (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR   404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work as defined in 20 CFR 404.1567(a) and 416.967(a) with restrictions that require simple, routine tasks; a supervised environment; no required interaction with the public or "team" type interaction with co-workers; no lifting and/or carrying over 10 pounds; no pushing/pulling over 10 pounds; no standing and/or walking over 2 hours in an 8-hour workday; no more than occasional stooping, twisting or crouching; no kneeling, crawling or climbing; no use of foot pedals or other

controls with the lower extremities; avoidance of hazards such as unprotected heights, vibration and dangerous machinery; and an environment reasonably free from dust, fumes, gases, odors, and extremes of temperature and humidity.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on July 11, 1962 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 19, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The Appeals Council denied the request for review in a decision issued March 7, 2012 (Tr. 1-7), and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action on May 8, 2012.

## STANDARD OF REVIEW

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The only

issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

On January 31, 2008, x-rays of Plaintiff's neck and back were performed based on her complaints of neck and back pain. Cervical spine x-rays showed mild arthritic facet changes and disc narrowing, and lumbar spine x-rays showed mild degenerative changes with L3-4 disc space narrowing. Tr. 800. Plaintiff saw Dr. Stuart Cooper of West Columbia Internal Medicine on September 17, 2008 for complaints of low back pain, anxiety/depression, lower extremity edema, and dyspnea. Dr. Cooper ordered tests and prescribed pain medication. Tr. 544. On December 18, 2008, Plaintiff saw Dr. Cooper for complaints of urticaria, low back pain, GERD and anxiety/depression. Tr. 584. An MRI of Plaintiff's lower back on February 9, 2009 showed diffuse multi-level degenerative disc disease without evidence of disc protrusion or stenosis, and facet arthropathy at L5-S1. Tr. 410, 864. Dr. Stuart Cooper reported in March 2009 that the MRI showed some "diffuse degenerative disk disease with no neural impingement." Plaintiff's left ankle was non-tender to palpitation, she had a good range of motion without pain, and she had no ankle instability. Tr. 537. Dr. Cooper saw Plaintiff again on May 21, 2009 for complaints of body aches and hypersomnia. He

scheduled a sleep study and an appointment with a rheumatologist.  Dr. Cooper referred Plaintiff to an endocrinologist and for an evaluation of her abnormal thyroid test results.  Dr. Cooper wrote a note for the Plaintiff to stay out of work through July 3, 2009. Tr. 535-536, 580-581.

Medical records from April 2009 show that Plaintiff was seeing Dr. John Motto, a pain specialist, for her neck and back pain. Tr. 567. On May 21, 2009,  Plaintiff was prescribed Percocet, Fentanyl, and Ritalin. Tr. 568-569. On June 17, 2009, Dr. Motto changed Plaintiff's medications to help with her pain. Tr. 485-486, 551-552.  Plaintiff continued to follow up regularly with Dr. Motto through April 2011.   Dr. Motto noted Plaintiff's complaints and repeatedly stated that her medications were helpful in relieving her pain. Tr. 553-560, 629-636, 674-678, 680-681, 716-721, 724-725, 816-819.

In July 2009, nurse practitioner Barbara Gilleylen performed a rheumatology consultation. Examination revealed that Plaintiff had decreased range of motion of her neck and some edema in her extremities, but no synovitis, tenderness, or range of motion deficits in her hands or feet. She had mild knee pain with range of motion and no limitation of motion of her hips.  It was noted that Plaintiff had a normal gait and straight-leg raise testing was normal.  Tr. 455-457, 804-806.

On July 29, 2009, Plaintiff complained to Dr. Cooper about myalgias and sleepiness. Examination showed tenderness of her shoulders, but no extremity edema. Mental examination was within normal limits. Tr. 532, 577. In August 2009, Plaintiff underwent a functional capacity evaluation ("FCE"), which indicated she could perform work in the light exertional range. Tr. 491-492.

On September 16, 2009, Dr. Cooper noted that Plaintiff's anxiety and depression were under reasonably good control on medications, and her pain was under fairly decent control. He noted she had some lower extremity edema, and referred her to an orthopedist.  Tr. 530-531, 575-576.

Dr. David Kingery of Lexington Orthopaedics noted that Plaintiff was alert and oriented and had a mildly antalgic gait on October 13, 2009.  Although she had a cyst on her left knee, she had intact motion and normal alignment. X-rays of Plaintiff's knees showed some changes of mild lateral patellofemoral arthrosis. Dr. Kingery aspirated the cyst and administered steroid injections to both knees.  Tr. 548-549.

On December 8, 2009, Dr. Cooper completed a form indicating Plaintiff had "slight" work-related mental limitations and might have "some" problems with her energy level and concentration.  He noted that her attention/concentration and memory were adequate. Dr. Cooper wrote a letter on December 18, 2009, stating that Plaintiff suffered from low back pain due to DDD, myofascial pain disorder, hypersomnia, chronic urticaria, anxiety, depression, and osteoarthritis of her knees.  He opined she could no longer work as a home health nurse. Tr. 820.

On February 2, 2010, Dr. Douglas Ritz performed a psychological evaluation of Plaintiff. He noted that Plaintiff reported her antidepressant medications were helpful, she did not cry as much, and her mood was brighter. It was noted that she helped get her granddaughter ready for school, made her bed, used a computer, watched television, and sometimes attended church. Dr. Ritz noted that Plaintiff was oriented to time and place, her memory was good, and she was able to concentrate and

focus adequately. Dr. Ritz opined that she could perform unskilled work and assigned her a Global Assessment of Functioning ("GAF") score of 55.[2] Tr. 598-600.

On February 9, 2010, Dr. Edward Waller, a state agency psychologist, reviewed the record and opined that Plaintiff was at most moderately limited by her mental limitations. He opined that Plaintiff had no episodes of decompensation; mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Waller concluded that Plaintiff could handle unskilled work, and would do best in a job that did not require ongoing public interaction. Tr. 602-618.

On March 22, 2010, Plaintiff saw Dr. Mitchell Hegquist for a consultative physical evaluation. Dr. Hegquist noted Plaintiff had a mild limp, full strength and range of motion in her extremities, no tenderness to palpation, the ability to use her hands, full range of motion of her neck and back, normal grip strength, an intact neurological status, and no muscle spasm or atrophy. Dr. Hegquist noted that from a mental standpoint, she was alert and oriented with a flat affect, intact memory, normal thoughts, and normal behavior. Dr. Hegquist opined that Plaintiff could handle her own personal relationships and funds. Tr. 620-624.

---

[2]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

On March 31, 2010, Dr. Cooper noted that Plaintiff's mental health medications were working better. Plaintiff reported continuing problems with osteoarthritis of her knees, and that while draining of the Baker's cyst and a cortisone injection a few months earlier helped, her symptoms returned. Plaintiff had a depressed affect and some extremity edema Tr. 712.

On April 5, 2010, Dr. Lindsey Crumlin, a state agency physician, reviewed the record and opined that Plaintiff could perform a range of light work. Tr. 638-645.

In a letter dated May 18, 2010, Dr. Cooper opined that Plaintiff could not successfully work in any type of employment. Tr. 646. On June 28, 2010, Plaintiff complained of left lateral chest and back pain. Dr. Cooper noted Plaintiff had full range of motion of her left shoulder, and assessed rib pain most likely a muscle strain of some sort. Tr. 706.

On July 7, 2010, Dr. Samuel Williams, a state agency psychiatrist, reviewed the evidence and opined that Plaintiff was at most moderately limited as to her understanding and memory, sustained concentration and persistence, social interaction, and adaptation. He opined that Plaintiff had no episodes of decompensation; mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Tr. 647-660, 669-671. He concluded that Plaintiff retained the ability to perform unskilled work with infrequent and non-intensive public contact. Tr. 671. Dr. Robert Heilpern, a state agency physician, also reviewed the evidence in July 2010, and concluded Plaintiff could perform a range of light work. Tr. 661-668.

On August 5, 2010, Dr. Motto responded to a request from Plaintiff's attorney, stating that questions of disability and/or fitness to work were outside the scope of his practice and would not

8

be addressed. Referring to a copy of the August 2008 FCE (discussed above), he recommended interpretation by a rehabilitation medicine specialist. Tr. 688-690.

On August 18, 2010, Dr. Cooper noted Plaintiff was doing pretty well on her medications for anxiety/depression, and she had some edema. Tr. 704-705. On September 21, 2010, Dr. Cooper opined (on a form provided by Plaintiff's attorney) that Plaintiff could not work due to sleepiness, impaired concentration, and physical limitations based on problems with her back and knees. Tr. 821-822. Dr. Cooper saw Plaintiff again in November 2010 and March 2011. Dr. Cooper continued to note that Plaintiff's medications were helping her anxiety and depression, and she had no edema on examination. Tr. 702-703, 810.

On March 31, 2011, Dr. Augustus Rodgers, a psychologist, completed a form from Plaintiff's attorney. He stated that, with the exception of Plaintiff's self reporting, he was unable to make a medical determination, but that Plaintiff was severely emotionally distressed. Dr. Rodgers noted that Plaintiff stated her pain made her incapable of working. Tr. 814-815. On April 20, 2011, Dr. Rodgers wrote a letter summarizing Plaintiff's treatment history with his clinic. Dr. Rodgers reported he had three therapy sessions with Plaintiff and that she suffered from chronic depression associated with her physical disability. He wrote that Plaintiff complained of severe pain that caused her to be incapacitated, and she could not work because of severe arthritis and chronic depression. Tr. 813.

During an examination at Waverly Family Practice on May 4, 2011, it was noted that Plaintiff had some extremity edema and mild swelling of her left foot. It was further noted that she was in no acute distress and had full range of motion of her ankles, normal muscle strength, and normal tone. Tr. 825-827.

9

On May 9, 2011, Dr. Rodgers wrote a letter to Plaintiff's attorney in which he summarized Plaintiff's complaints during her four therapy sessions. He stated that Plaintiff was still depressed, and opined she was unable to work due to her physical impairments. Tr. 831.

Plaintiff submitted additional records to the Appeals Council. See Tr. 360, 834-968. Many of these records concern treatment well before her alleged onset date. Additional records are of medical treatment after the time of the ALJ's decision.[3]

## HEARING TESTIMONY

Plaintiff testified that she lives at her mother's home with her daughter and granddaughter. Tr. 53. She stated she had a driver's license, but did not drive to the hearing. Tr. 55. Plaintiff testified that her feet were her most severe impairment and her hands were second in severity, but she hurt all over. Tr. 62, 66. Plaintiff said her sleep apnea began two years earlier (Tr. 74), but was helped by a continuous positive airway pressure ("CPAP") machine (Tr. 77). She said she slept only four to six hours a day, had no trouble falling asleep, but had trouble staying asleep. Tr. 78-79. She said she continued to smoke cigarettes, but was trying to quit and only smoked less than a pack a day. Tr. 76. Plaintiff testified she prepared her own breakfast, watched television, and did crossword puzzles. Tr. 81, 83.

---

[3]As noted by the Commissioner, the Appeals Council considered the evidence, but found it did not provide a basis for changing the ALJ's decision (Tr. 1-7). Plaintiff did not dispute this finding. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the ALJ's decision is supported by substantial evidence. Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011); see Wilkins v. Secretary Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir.1991)(en banc). The undersigned has considered these records in preparing this report and recommendation.

## **DISCUSSION**

In her Complaint, Plaintiff appears to allege that her medical records show she is disabled. She specifically disputes the ALJ's discounting the opinions of Dr. Cooper and argues that she did not receive a fair hearing because there was animosity between the ALJ and her attorney.  ECF No. 1 at 5-8. In her Brief, Plaintiff appears to allege that the ALJ failed to adequately consider the side effects of her medications. She also submitted new evidence which she claims shows that she should be awarded benefits. In her Reply Brief, Plaintiff appears to argue that the ALJ ignored the medical evidence, her attorney did not give her "any kind of representation" at the hearing before the ALJ, and the ALJ would not allow her to speak because she was represented by an attorney.[4] On May 16, 2013, Plaintiff submitted medical records as to a hospitalization from May 7 to 10, 2013. The Commissioner contends substantial evidence[5] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act and the decision is free of harmful error. In particular, the Commissioner argues that the assessment of Plaintiff's residual functional capacity ("RFC") by the ALJ adequately included Plaintiff's credible limitations, the ALJ reasonably

---

[4]In her Complaint and Reply Brief, Plaintiff appears to dispute some of the information supplied by medical sources, claiming that not all of her impairments were fully documented.  She has presented nothing other than her own opinion to dispute this.  The Court cannot second guess the medical record as contained in the record.

[5]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

considered Plaintiff's medication side effects, and the Court may not consider Plaintiff's newly submitted evidence.

A.     Medication Side Effects

Plaintiff alleges that the ALJ failed to consider the medications she takes in determining her case.  She argues that the side effects are detailed in Dr. Motto's and Dr. Cooper's notes.  In particular, she appears to argue that the ALJ failed to consider the side effects of her pain medications and allergy medications including sleepiness which she experiences despite being prescribed Ritalin (to help with her drowsiness). The Commissioner contends that the ALJ fully considered the alleged medication side effects when evaluating Plaintiff by finding that this was a separate severe impairment and discussing the medications and alleged side effects several more times in his decision.

The Social Security Regulations require an ALJ to consider all the evidence in the record when making a RFC determination, including the side effects of medications the claimant is taking. SSR 96-8p.  The ALJ is also required to consider the side effects of a claimant's medications in making his or her credibility determination.  See 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

Here, the ALJ found that medication side effects were a severe impairment, but did not identify what side effects constituted the severe impairment. It is unclear from the ALJ's decision the impact of Plaintiff's medication side effects on her RFC.

12

As to Plaintiff's credibility, the ALJ notes that Plaintiff testified her weight fluctuates because of the side effects of her medication (Tr. 34) and she could not drive because of her medications (Tr. 35), but does not note her testimony of sleepiness as a result of her medications. Plaintiff testified that when she began taking her medications, she fell asleep in patients' homes. Tr. 108. At the hearing, the ALJ also requested that Plaintiff submit notes she brought with her. Tr. 106-107. In the notes, Plaintiff complains of drowsiness. Tr. 356.

The ALJ states reasons for not finding Plaintiff's allegations of disabling and limited functional capacity to be credible. Tr. 36. It is unclear from the opinion, however, why he discounted her alleged side effects from her medications. Dr. Cooper noted that one of Plaintiff's chief complaints in July 2009 was hypersomnolence. Plaintiff reported falling asleep "all the time," at the wheel, and while interviewing a patient. Tr. 532. Hypersomnia was noted by Dr. Cooper on June 10, 2009. Tr. 533. Dr. Cooper noted in his May 2010 letter that Plaintiff suffered from a severe degree of sleepiness, she was on several medications that increased her sleepiness, and she was on Ritalin to counteract the sleep-producing effects of her medicines (but that had not been successful). He noted that Plaintiff frequently falls asleep when sitting up and when she is on the toilet. Tr. 646. In April 2009, Dr. Motto noted Plaintiff's complaint that sitting at a computer was guaranteed to put her to sleep and prescribed a "[t]rial of ritalin for med-associated sedation." Tr. 567. She complained in May 2009 that she was so sleepy she could not keep her eyes open. Tr. 568-569. He increased her Ritalin dosage in July 2009. Tr. 559. He continued to prescribe Ritalin throughout her visits. See Tr. 485-486, 551, 553, 556, 559, 629-632, 635-636, 674-677, 680-681, 716-719, 942-943, 954-955. This action should be remanded to the Commissioner to fully consider the side effects of Plaintiff's numerous medications in determining her RFC and credibility.

13

B.    Treating Physician

In her Complaint, Plaintiff appears to allege that the ALJ erred in not accepting the opinions of her treating physician, Dr. Cooper.  Dr. Cooper wrote in May 2010 that he was treating Plaintiff for severe recurrent urticaria, obstructive sleep apnea, anxiety, major depression, osteoarthritis of her knees, lumbar DDD, and myofascial pain syndrome. He opined that due to the functional limitations resulting from these conditions, Plaintiff could not successfully work in any type of employment.  He further opined that Plaintiff's arthritis and other pain syndromes significantly limited her ability to kneel, squat, lift, or be able to stand for long periods of time. Additionally, he noted that Plaintiff suffered from a severe degree of sleepiness, she was on several medications that increased her sleepiness, Ritalin was unsuccessful in counteracting the sleep-producing effects of her medications, she frequently fell asleep while sitting up and on the toilet, and she did not drive due to her concern that she would fall asleep. Tr. 646. In September 2010, Dr. Cooper completed a questionnaire in which he wrote that Plaintiff's diagnoses included myofascial pain syndrome, lumbar DDD, urticaria, obstructive sleep apnea, major depression, anxiety, osteoarthritis in her knees, pain issues, and depression. He specified that her low back pain, knee pain, and hypersomnolence were severe impairments.  He opined that Plaintiff was not likely to see significant improvement and was unable to work in any type of employment.  He noted that treatment included medications and a CPAP for sleep apnea.  He wrote that medical and laboratory testing results included a sleep study positive for sleep apnea and a lumbar spine MRI showing multi-level DDD.  As an additional comment, Dr. Cooper wrote that due to multiple medications for treatment of her urticaria and pain, Plaintiff suffered from severe daytime sleepiness and she had the non-exertional limitations of sleepiness and poor concentration. Dr. Cooper opined that Plaintiff's condition rendered her unable to work in any

14

capacity based on her inability to drive due to the risk of her falling asleep at the wheel, anxiety and depression which impaired her concentration, and an inability to do physical work due to limitations from her back and knees. He assessed restrictions of no driving, kneeling, squatting, lifting, or standing for prolonged periods.  He opined that she had an impaired ability to concentrate and work consistently.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527.  Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p.

15

The ALJ discounted Dr. Cooper's May 2010 opinion because he found that it was not supported by the longitudinal record of treatment; the treatment record reflected that Plaintiff stopped working because she wanted to take a six-week leave of absence due to reported pain, but the treatment notes show she traveled to Colorado to visit a friend; Dr. Cooper's notes indicated that Plaintiff's overall condition was stable with medication; and the opinion is not binding because it is on an issue reserved to the Commissioner. It is unclear from the ALJ's decision, however, what weight the ALJ assigned to Dr. Cooper's September 2010 opinion of disability. Although Dr. Cooper's later opinion repeats much of May 2010 opinion, it provides additional information that the ALJ should have addressed. Additionally, as this later opinion also addresses question of attention and concentration, this may also affect the analysis of psychologist Dr. Rodgers' April and May 2011 (Tr. 813 and 831) opinions that Plaintiff is unable to work. This action should be remanded to the Commissioner to properly consider all of the opinion evidence.[6]

C.     New Evidence

With her brief, Plaintiff submitted records from Dr. Angus McBride and Dr. John Walsh, orthopaedic surgeons, and from Dr. Motto.[7] She argues these records support her contention that she is disabled. With her reply, she resubmitted a number of these records and added a letter from

---

[6]Plaintiff disputes the ALJ's discounting of Dr. Cooper's May 2010 opinion based on her going to Colorado, stating she did not go there in the timeframe when she requested the six-weeks leave. There does not appear to be any testimony concerning this at the hearing. If this action is remanded, the ALJ should clarify this alleged discrepancy.

[7]Two of these records (September 21 and November 22, 2011 examinations by Dr. Walsh) are in the record. Tr. 937, 948. Plaintiff submitted additional records not part of the record, including records from an examination by Dr. McBryde on March 14, 2012; examination by Dr. Walsh on May 25, 2012; records from surgery by Dr. Walsh on her left thumb on June 25, 2012; examination by Dr. Walsh on July 6, 2012; and a visit with Dr. Motto on November 13, 2012. ECF No. 26-1.

Dr. Motto opining disability dated December 13, 2012. On May 16, 2013, she submitted records of a hospital admission from May 7 to 10, 2013.[8] The Commissioner contends that the Court may not consider this newly submitted evidence as judicial review is limited to the administrative record and Plaintiff has not met the legal standard for a Sentence Six remand. In particular, the Commissioner argues that the evidence is dated well after the ALJ issued his decision and does not appear to be retrospective in nature such that it is not relevant to the time period at issue; the later-dated evidence is not that different from the evidence from the relevant time period and merely reflects that Plaintiff continued to complain of musculoskeletal pain and underwent a hand surgery that apparently improved her symptoms such that Plaintiff cannot establish that the ALJ's decision would have been different if the additional evidence was before the ALJ.

"Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g). The Commissioner's decision should not be reversed based on the submitted evidence as it is not part of the administrative record.

Additionally, Plaintiff fails to show that this action should be remanded to consider new evidence. Additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence. These prerequisites are as follows:

---

[8]Plaintiff was taken to the hospital after she was found unresponsive in the bathroom. A CT of her head revealed no active or acute findings. Her discharge diagnoses were altered mental status and somnolence, encephalopathy, chronic pain with chronic narcotic use, GERD, chronic urticaria, chronic peripheral lower extremity edema, anxiety, and depression. ECF No. 28-1.

1.    The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.

2.    The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.

3.    There must be **good cause** for the claimant's failure to submit the evidence.

4.    The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.

See Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985).[9]  A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative."  Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).

Here, the records submitted are all well after the ALJ's May 2011 decision.  These records are not relevant because they do not pertain to the time period considered by the ALJ and are not retrospective.[10]  There is no indication that these records are material to the extent that the

_____

[9]The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir.1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superceded by the standard in 42 U.S.C. 405(g). Id. at 774; see Wilkins, 953 F.2d at 96 n. 3.  The standard in 42 U.S.C. § 405(g) allows for remand where "there is new evidence which is material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that the Borders construction of 42 U.S.C. § 405(g) is incorrect.  See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6 (1990). Thus, the more stringent Borders test should be applied.  Even if the less stringent test is applied, Plaintiff fails to show that this case should be remanded based on new evidence because she fails to show that the new evidence is material.

[10]If the referred to evidence shows a deterioration in Plaintiff's condition after the ALJ's decision, it would not be a basis for remand, although it might be grounds for a new application for benefits.  See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for

(continued...)

18

Commissioner's decision might reasonably have been different had the new evidence been presented. In his decision, the ALJ discussed the evidence as to the impairments which Plaintiff appears to argue are disabling based on this new evidence and found that she was able to perform a range of sedentary work based on her combination of impairments. At most, the newly submitted evidence shows a decline in Plaintiff's condition well after the ALJ's decision and not that these conditions were disabling for a period of at least twelve months during the relevant time period. Additionally, Dr. Walsh noted on July 6, 2012 that Plaintiff walked with a normal gait and post-surgical notes appear to show an improvement in her condition.

      D.      <u>Bias/Full and Fair Hearing Before the ALJ</u>

Plaintiff appears to argue that the ALJ was biased against her attorney because he rolled his eyes several times after her attorney spoke. Plaintiff also argues that her attorney did not give her "any kind of representation." Plaintiff asserts that the ALJ told her she could not speak because she had an attorney to speak for her, and that this caused her such grief that she became upset and emotional, she cried, and she guessed at dates and could not elaborate.

Any such allegation must begin from the presumption that the ALJ is unbiased. <u>See Schweiker v. McClure</u>, 456 U.S. 188, 195–96 (1982)(discussing ALJs who decide Medicare Part B claims). This presumption may be rebutted if the plaintiff demonstrates that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." <u>Liteky v.. United States</u>, 510 U.S. 540, 556 (1994)(criminal trial); <u>see also</u> <u>Davis v. Astrue</u>, No. 5:10CV72, 2011 WL 3236196, at *3 (N.D.W.Va. July 28, 2011)(applying <u>Liteky</u> and <u>Schweiker</u> to Social Security context).

---

[10](...continued)
benefits."); <u>see also</u> <u>Godsey v. Bowen</u>, 832 F.2d 443, 445 (7th Cir. 1987); <u>Sanchez v. Secretary of Health & Human Servs.</u>, 812 F.2d 509, 512 (9th Cir. 1987).

Expressions of impatience, dissatisfaction, annoyance, and even anger are not sufficient to establish bias or impartiality. Liteky, 540 U.S. at 566.

Review of the hearing transcript reveals that the ALJ appeared irritated at the ALJ for submitting an amended pre-trial brief when there were not any changes, for not using the correct medication form, and for not thinking to have a bottle of water available for Plaintiff (because of dry mouth) while she testified. The ALJ also stated, however, that Plaintiff's attorney was "a very experienced individual." Tr. 63. The ALJ also appears to interrupt both Plaintiff and her attorney on numerous occasions. Review of the record reveals that the ALJ's conduct, while impatient and abrupt, falls short of the requirement for a showing of bias. Although a clearer record may have been obtained without the interruptions, it appears that adequate testimony was obtained from Plaintiff during the nearly two-hour hearing as to her past work experience, her impairments, her complaints of pain, and her activities of daily living.[11] It is, however, recommended that if this case is remanded, that this action be assigned to a different ALJ.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to fully consider the side effects of Plaintiff's medications and to consider the opinions of Plaintiff's treating physicians in light of all of the evidence. It is further recommended that the Commissioner consider assigning this case to a different ALJ.[12]

---

[11] "Claimants in disability cases are entitled to a full and fair hearing of their claims...and the failure to have such a hearing may constitute good cause sufficient to remand to the [Commissioner] under 42 U.S.C. s 405(g) for the taking of additional evidence." Sims v. Harris, 631 F.2d 26, 27 (4th Cir.1980)(citations omitted).

[12] Plaintiff requests attorney's fees, presumably for her work in pursuing this action in this

(continued...)

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

June 20, 2013
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[12](...continued)
Court (she was represented by counsel while the case was before the ALJ and Appeals Council). The Social Security Act only permits recovery of fees to attorneys who represent claimants: "Whenever a court renders a judgment favorable to a claimant under this subchapter **who was represented before the court by an attorney**, the court may determine and allow as part of its judgment a reasonable fee for such representation...." 42 U.S.C. § 406(b)(1)(A)(emphasis added). Additionally, a pro se litigant who has not engaged an attorney is not entitled to attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See, e.g., Krecioch v. United States, 316 F.3d 684, 688 (7th Cir.2003); SEC v. Price Waterhouse, 41 F.3d 805, 808 (2d Cir.1994); Hexamer v. Foreness, 997 F.2d 93, 94 (5th Cir.1993); Celeste v. Sullivan, 988 F.2d 1069, 1070–71 (11th Cir.1992).

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).